**SABRINA P. SHROFF**  
ATTORNEY AT LAW

80 BROAD STREET, 19TH FLOOR  
NEW YORK, NEW YORK 10007  
TELEPHONE: (646) 763-1490

January 10, 2023

**BY ECF**

Honorable Naomi Reice Buchwald  
Senior Judge, United States District Court  
for the Southern District of New York  
500 Pearl Street  
New York, New York 10007

Re: *United States v. Kim Ahn Vo,* **19 Cr. 223-001 (NRB)**  
(Kim Ahn Vo's Sentencing Submission to Court)

Dear Judge Buchwald:

      I write on behalf of Ms. Kim Ahn Vo to request that the Court sentence here to the 12 months already served by Ms. Vo at several county jails and then at the Metropolitan Correctional Center. A sentence of time served is appropriate here because, as discussed below, such a sentence fully accords with all the sentencing factors -- *i.e.*, proportionality, deterrence, incapacitation, and rehabilitation -- and overarching parsimony principle set out in 18 U.S.C. § 3553(a).

## DISCUSSION

A. **Kim Ahn Vo**

      Kim Ahn Vo has pled guilty to one count of participating in a conspiracy to provide material support to a designated foreign terrorist organization – namely, ISIS. Specifically, from April 2016 through May 2017, starting while she was just a 16-years old, Ms. Vo spread ISIS propaganda and encouraged support of ISIS via Twitter and the Internet as a member of the "United Cyber Caliphate" ("UCC"). Importantly, Ms. Vo soon regretted her involvement with ISIS. On three occasions – July 6, 2017, July 31, 2017, and August 16, 2018 – Kim unilaterally and voluntarily contacted the FBI and freely discussed the UCC and her role in it. Pre-Sentence Report ("PSR") ¶¶ 28, 56-57. Moreover, while she was eventually arrested in 2019, the FBI investigated and determined that "Vo's conduct related to the support of terrorism ceased after VO spoke with the FBI in 2017." *Id.* ¶ 28.

      Over two years after she left ISIS, on March 26, 2019, Ms. Vo was arrested. PSR at 1. One year later, on March 31, 2020, this Court released her on bail, with the consent of the government. *Id.*; ECF Nos. 21, 23, 25-27. "According to U.S. Probation Officer Brownlee, [Ms. Vo] has been compliant with the terms of her supervision and meets with her supervising officer monthly." PSR ¶ 6. Ms. Vo's behavior while out on bail continues her equally admirable behavior in prison. Prison records "reflect no history of disciplinary actions taken against the defendant." PSR ¶ 5. While at the MCC, Ms. Vo worked as Unit 2 order and maintenance worker and completed

# SABRINA P. SHROFF, ESQ.

Hon. Naomi Reice Buchwald
United States District Court
January 10, 2023
Page 2

several academic and related courses while in prison. *Id.* ¶¶ 5, 104, 107. She also began the regular therapy that she has continued while out on bail, therapy that directly deals with her past trauma and the severe depression and anxiety it caused – depression and anxiety that made her particularly vulnerable to getting involved in the instant offense. *Id.* ¶¶ 94-96. Ms. Vo worked with Rebecca Weiser while incarcerated at the MCC and upon released started in therapy with Angela Kersey, a social worker at Georgia Family Crisis Solutions. See, Ex. A.

Ms. Vo has taken full advantage of the opportunity presented her by the Court. She has lived a quiet and law-abiding life with her family, working at her aunt's nail salon while pursuing a real estate license and otherwise continuing her education. PSR ¶¶ 87-89, 102-106. Ms. Vo's family has come to heavily rely on her financially and emotionally, particularly since her father passed away in early 2022. As her mother relates, Kim "has been responsible for the family's needs, including shopping and helping her [mother] with day-to-day tasks since she does not speak English." PSR ¶ 87. Indeed, Kim is her family's only available support. Her sister is attending school in South Carolina and her brother is still in high school.

As important, Ms. Vo has taken concrete steps to address the reasons she fell for ISIS propaganda and joined it while she was in high school. Starting while at the MCC, and continuing since her release on bail, Ms. Vo has entered intense, regular therapy to address ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ PSR ¶¶ 92-98.

At the time of her offense, Kim Ahn Vo was a high schooler in Hephziba, Georgia. PSR ¶¶ 77-80. Her parents brought her to the United States from Vietnam when she was approximately four years old, and the family first settled in Arkansas, first in Lonoke and then in Stuttgart. The family had five members: father ▇▇▇; mother ▇▇▇; Kim; and Kim's two younger siblings, sister ▇▇ and brother ▇▇ (Letters from ▇▇ to the Court, explaining their sister's profound remorse for her actions and why their sister should remain at home, are attached to this sentencing submission as **Exhibits B and C**.)

While in Arkansas, Kim's parents opened a Chinese restaurant. The family was poor and struggling and both parents worked long hours at the restaurant every day and night of the week. PSR ¶¶ 80, 85. Kim had a hard time fitting in. At home, she did not feel close to her mostly absent parents or to her siblings. *Id.* ¶ 85. In school, she was mercilessly bullied because she was foreign and different from the other students. *Id.* ¶ 81. And, unbeknown to her parents, she was verbally, emotionally, and physically abused every day by her babysitter in ▇▇, Arkansas. *Id.*

After a year in Stuttgart, the family restaurant failed, and the Vos moved to Georgia. Moving to Georgia improved matters somewhat. The family was more financially stable and the babysitter was gone. PSR ¶ 82-83. Kim, however, continued to be bullied into middle school. *Id.* ¶ 83.

By the time she got to Hephziba Comprehensive High School, Kim was severely depressed and anxious. PSR ¶ 92-93. Her path was made all the harder when her efforts to join the computer science program in the school were blocked by school administrators. *Id.* ¶ 84. Kim reacted by

# SABRINA P. SHROFF, ESQ.

Hon. Naomi Reice Buchwald
United States District Court
January 10, 2023
Page 3

joining a bad crowd of older students, to try to be popular and find the close relationships she did not have at home. *Id.* When her father stepped in and ended her relationships with those older students, Kim reacted by withdrawing from home and from school. *Id.* Lonely, and with no one to talk to, things grew even worse. She began ███████████████████████████████. *Id.* ¶ 92. S████████████████████████████████ *Id.* ¶ 93.

With no relationships or support in the real world, Kim began to spend more and more time online, looking to become part of a community there. Tragically, she found it, at least for a short time, with the UCC organization. As Ms. Vo related:

> [S]he felt lonely and depressed and that she had no one to talk to during this time. Vo related that the organization provided her with the support she wanted, but she wished she had someone in her life she was able to speak to instead of getting involved in terrorism. The defendant stated that she stopped around the age of 18 because it "clicked" what she was doing was wrong. She reported that she felt ashamed and mortified because she knew what she did was wrong and illegal. Vo related that she self-reported her conduct to the Federal Bureau of Investigation (FBI) approximately one month after she ceased her involvement.

PSR ¶ 56.

Since her release on bail, Ms. Vo has worked hard and succeeded in addressing her emotional problems and in healing her fractured relationship with her family. *See, e.g.,* attached Exhibits. Plainly, Ms. Vo is not at risk to reoffend or a danger to her community. She deeply regrets what she did and, as the last five plus years make crystal clear, will simply continue to lead a completely admirable, law-abiding life out of prison. Given all this, the appropriate sentence here is time served plus three years of supervised release. Such a sentence will recognize Ms. Vo's youth and mental/emotional struggles at the time of her offense; the fact that she left the UCC voluntarily and completely long before her arrest; the important and indispensable role she now plays in her family; and will permit her to continue her therapy without interruption and grow the family and community ties she has created since her release on bail.

**B.**     **The Legal Standards for Sentencing**

In selecting a sentence, this Court takes as its "lodestar the parsimony clause of 18 U.S.C. § 3553(a)." *United States v. Douglas,* 713 F.3d 694, 700 (2d Cir. 2013). That provision directs sentencing courts to "'impose a sentence sufficient, but not greater than necessary, to comply with' the factors set out in 18 U.S.C. § 3553(a)(2)," i.e., "proportionality, deterrence, incapacitation, and rehabilitation." *Id.; see also, e.g., Pepper v. United States,* 562 U.S. 476, 493 (2011); *Dean v. United States,* 137 S. Ct. 1170, 1175 (2017); *United States v. Ministro-Tapia,* 470 F.3d 137, 142 (2d Cir. 2006).

In determining such a sentence, the sentencing court must consider the United States

**SABRINA P. SHROFF, ESQ.**

Hon. Naomi Reice Buchwald
United States District Court
January 10, 2023
Page 4

Sentencing Guidelines, the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to serve the purposes of sentencing, the kinds of sentences available, the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a)(1). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. 18 U.S.C. § 3661.

While the sentencing guidelines comprise one factor for this Court to consider, they are only one such factor, and "truly are advisory." *Douglas,* 713 F.3d at 700 (quoting *United States v. Cavera,* 550 F.3d 180, 189 (2d Cir. 2008) (en banc)). This Court "may not presume that the Guidelines range is reasonable," but rather "must make an individualized assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 50 (2007); *see also Nelson v. United States,* 555 U.S. 350, 352 (2009). Here, an individualized assessment of the § 3553(a) factors (and application of the parsimony clause) strongly support the requested sentence of time served (12 months) followed by three years (36 months) of supervised release.

**C.    The 3553(a) Sentencing Factors Strongly Support the Requested Non-Guidelines Sentence of Time Served**

As detailed above, Ms. Vo's personal characteristics and history support the requested non-guidelines sentence. Federal courts have long recognized that the "significant gaps" in maturity and pernicious vulnerability to outside influence that so affect the young are relevant to sentencing. *Miller v. Alabama,* 567 U.S. 460, 471 (2012); *Gall v. United States,* 552 U.S. 38 (2007) (holding that "it was not unreasonable for the District Judge to view [21-year-old] Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future"); *Johnson v. Texas,* 509 U.S. 350, 367 (1993) (finding, in the case of a 19-year-old convicted of murder, that there "is no dispute that a defendant's youth is a relevant mitigating circumstance. ... Our cases recognize that 'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage") (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 115 (1982)).

It is evident that Ms. Vo is a good person who was dangerously misled by ISIS's lies as a young, naïve, and unhappy teenager. At the time, she was deeply vulnerable to those lies because of years of bullying and abuse, mental health problems, and resulting failures, all of which were unaddressed at the time. Science makes clear that there are "fundamental differences between juvenile and adult minds. For example, parts of the brain involved in behavior control continue to mature through late adolescence." *Graham v. Fla.,* 560 U.S. 48, 68 (2010) (citations omitted). In addition, adolescence is a period characterized by increased impulsivity, risky behaviors, and reward-seeking given the asynchrony in the development of the affective and cognitive centers of the brain. The affective centers of the brain mature immediately in early adolescence, igniting heightened reward-seeking behaviors, while the cognitive control centers which increase self-

**SABRINA P. SHROFF, ESQ.**

Hon. Naomi Reice Buchwald
United States District Court
January 10, 2023
Page 5

regulation competence develop more gradually, reaching maturity in the mid-20s. Consequently, adolescents experience greater urges to pursue reward and weakened capacities to inhibit such actions at the same time. Steinberg L., *A Social Neuroscience Perspective on Adolescent Risk-Taking*. Dev Rev. 2008; 28(1):78-106. doi:10.1016/j.dr.2007.08.002. The combination of heightened attentiveness to rewards and still-maturing impulse control makes middle and late adolescence a period of greater risk-taking than any other stage of development, with the riskiest behaviors occurring between 18 and 21. Because adolescents at this age are at the threshold of their independence, much of these risky behaviors are unmonitored by adults, making this a very vulnerable period in every teenager's development. *Id.*

In the years since her arrest, Ms. Vo has taken, and continues to take, concrete steps to address the circumstances that made her susceptible to radicalization and whe has fundamentally changed for the better. The teenager who committed the offense is gone; it is the young adult before the Court – who (i) voluntarily ceased the offense years before the arrest; (ii) has been living a quiet, law-abiding, and gainfully employed life in the years since being released on bail; and (iii) has paid out her own pocket for the mental health counseling that is addressing the root causes of her prior radicalization and ensures she will never again reoffend – that must be individually considered and then sentenced by the Court. *See United States v. Rose,* 379 F. Supp. 3d 223, 233-234 (S.D.N.Y. 2019) ("the district court [must] be able to consider the most recent evidence of a defendant's life and characteristics, which may be the most probative information available, when deciding whether a defendant should continue to be incarcerated or, in some cases, be immediately released"); *Pepper v. United States,* 562 U.S. 476, 477 (2011) (holding that, for sentencing purposes, it is the "most up-to-date picture of [a defendant's] history and characteristics" that should be treated as fundamental).

Today, Ms. Vo continues to take full responsibility for her actions and is very remorseful for her criminal conduct. PSR ¶ 56. She is committed to leading a law-abiding and even exemplary life, as demonstrated by everything she has done since 2017, when her online support of ISIS ceased voluntarily and completely. *See id.* ¶ 29. These years of moderation, hard work, and peaceful growth and education conclusively demonstrate Ms. Vo's successful rehabilitation. This Court never would have Ms. Vo on bail – and the government would never have consented to Ms. Vo's bail request – if she had posed any risk of risk of recidivism or community danger. Her scrupulous adherence to her bail conditions, and the time and money she has spent on mental health counseling since her release, shows that the Court and the government's decision was the right one. Simply put, Ms. Vo was completely rehabilitated then and remains completely rehabilitated now. No risk exists if she is allowed to complete the rest of her sentence under supervised release. *See United States v. Jones,* 2021 U.S. Dist. LEXIS 60632 (D. Conn 2021) (defendant's "efforts toward rehabilitation support the conclusion that he has a low risk of recidivism and therefore that his release does not pose a risk to public safety").[1]

---

[1] *See also United States v. Vargas,* 502 F. Supp. 3d 820 (S.D.N.Y. 2020) ("because of the seriousness of Mr. Vargas' past conduct, his rehabilitation is critical to the court's finding that [he] likely does not pose a danger to the public"); United *States v. Core,* 125 F.3d 74, 75 (2d Cir. 1997)

**SABRINA P. SHROFF, ESQ.**

Hon. Naomi Reice Buchwald
United States District Court
January 10, 2023
Page 6

Moreover, allowing Ms. Vo to complete her sentence on supervised release will allow her to build on the community ties, positive relationships, and gainful employment that she has worked to create in the last few years since she was released on bail. *See* PSR ¶¶ 87-89, 103, 105, 106. Most importantly, it will allow her to continue counseling and treatment with Angela Kersey at Georgia Family Crisis Solutions, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, has been working successfully with Ms. Vo since April 17, 2020, and who is the best person by far to continue Ms. Vo's therapy. *See* PSR ¶ 96. Thus, the requested sentence of time served and supervised release fully accords with the sentencing goal of providing a defendant with needed educational or vocational training, medical care, or other treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). For all these many, independent reasons, Ms. Vo's history and individual characteristics strongly support the requested non-guidelines sentence.

Likewise, the sentencing goals of specific deterrence and rehabilitation already have been met here. Ms. Vo's (i) wholesale and sincere rejection of her prior radical beliefs; (ii) genuine remorse and acceptance of responsibility for her actions; (iii) entry into voluntary counseling to understand the sources of her prior mistaken choices; and (iv) entirely exemplary conduct since her release on bail all demonstrate that Ms. Vo has turned her life around. She is committed to maintaining progress and continuing to achieve in the future, and the best way of doing so is to allow her to continue to build on the success she has found outside of prison and with her family. Demonstrably, no additional jail time is needed to specifically deter Ms. Vo. Congress has recognized that "imprisonment is *not* an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a) (emphasis added). This is particularly true here, where correction and rehabilitation are best addressed in this case not by adding additional years to time already spent in prison, but by allowing Ms. Vo to lead a quiet and law-abiding life under supervised release with continued treatment.

As to incapacitation and punishment, the requested non-guidelines sentence is sufficient punishment given her reformation. While below the advisory guidelines range, Ms. Vo has spent 12 months behind bars paying for her actions, and would spend an additional three years in supervised release. In this regard, the United States Supreme Court has emphasized that supervised release "is not merely 'letting an offender off easily,'" *Gall v. United States,* 552 U.S. 38 (2007), because supervised release involves "substantial restrictions on freedom" that effectively deter and punish in their own right. *Id.* Under the requested sentence, Ms. Vo would sentenced to four years of punishment for her actions as a teenager.

As for general deterrence, the requested sentence will generally deter others who are considering making the same type of mistake as Ms. Vo. Studies have shown that it is the arrest that best deters, not the length of the sentence.[2] Here, Ms. Vo's family neighbors, associates, and

---

("We find nothing in the pertinent statutes or the Sentencing Guidelines that prevents a sentencing judge from considering post-conviction rehabilitation in prison as a basis for departure.").

[2] *See, e.g.,* Valerie Wright, THE SENTENCING PROJECT, DETERRENCE IN CRIMINAL

**SABRINA P. SHROFF, ESQ.**

Hon. Naomi Reice Buchwald
United States District Court
January 10, 2023
Page 7

community already have seen her arrested and imprisoned, and then subject to strict bail conditions. Hence, the requested sentence that is more than enough to deter others.

By contrast, both the 60-month guidelines sentence, and the 44 months recommended by the Department of Probation, violate the parsimony principle guiding federal sentencing. Either proposed sentence is far greater than necessary to punish Ms. Vo or deter others. Indeed, a longer sentence would be self-defeating and contrary to the sentencing goals. It would be a message to others that even the best efforts to rehabilitate and reject radical Islam and become a lawful, contributing member of society will be ignored, or have little impact, at sentencing. Ignoring or giving short shrift to Ms. Vo's rehabilitation and immediate, voluntary change of heart and remorse, could be twisted by others to feed into the radical narrative that Muslims will always be hated, persecuted, and unfairly treated in the West. It may well convince others that changing your mind about supporting terrorism and voluntarily contacting the FBI to provide them information and answer their questions, as Ms. Vo did, is pointless at best, and that no real option exists but to continue the offense conduct wherever it may lead.

Imposing a non-guidelines sentence based on who Ms. Vo is today is not only required of the Court *(Quintieri, 3*06 F.3d at 1230), it will strongly encourage others to make the same positive choices and strides as Ms. Vo. General deterrence is best served here by having Ms. Vo remain out in her community demonstrating that there is a real alternative to extremism and a material benefit to changing your mind and contacting the authorities. That outcome will do far more to deter others than sentencing her to more years in prison.

Finally, the Department of Probation recognizes (i) Ms. Vo's youth; (ii) her mental health struggles; (iii) the trauma that made her particularly vulnerable to ISIS brainwashing; (iv) that she has no concerning history of criminal behavior or violence; (v) her strong family ties; (vi) that she has complied with all terms and conditions of release; (vii) that she is not a flight risk or danger to the community; and (viii) that she has worked on improving herself through counsel, education, and hard work. *See* Sentencing Recommendation. Yet, the Department of Probation seems to feel that all this is far outweighed by the crimes of the ISIS organization that Ms. Vo once supported, necessitating another three years in jail for Ms. Vo. *See id.* The Department of Probation is wrong.

Ms. Vo "acknowledge[s] responsibility" for her prior actions and has "consistently expressed genuine remorse and shame for her conduct which is why she voluntarily withdrew from that." PSR ¶ 94. No one denies or minimizes her offense and ISIS is horrific. Nevertheless the focus at sentencing must remain squarely on this individual defendant, Ms. Vo, and the determination of what is the *least necessary sentence* that will meet the sentencing goals as to her. In this regard, the *United States v. Ahmed,* No. 1:15-cr-00049 (D. Minn.), a case involving a defendant who attempted to travel to Syria to join and fight with ISIS, the sentencing court

---

JUSTICE: EVALUATING CERTAINTY VS. SEVERITY OF PUNISHMENT, 5-6 (2010), http://www.sentencingproject.org/wp-content/uploads/2016/01/Deterrence-in-Criminal-Justice.pdf.

# SABRINA P. SHROFF, ESQ.

recognized that the sentencing focus must remain on the defendant being sentenced, rather than ISIS, and that, even in cases involving ISIS, the proper sentence remains one sufficient, but not greater than necessary, to "deter others from committing similar crimes, ensure the safety of the public, and avoid unwarranted sentencing disparities." *Id.* Here, the requested non-guidelines sentence readily meets each of those sentencing goals; any additional time in prison would be greater than necessary.

## CONCLUSION

An individualized assessment of the § 3553(a) factors in this case (and the parsimony principle underlying federal sentencing) strongly support a non-Guidelines sentence of time served and three additional years of supervised release. Ms. Vo respectfully requests that the Court impose that sentence upon her.

Respectfully submitted,

/s/Sabrina P. Shroff
Counsel to Kim Ahn Vo

SPS/
Exhibits A-C